IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

TERESA GUINN,

        Plaintiff,

v.                              CIVIL ACTION NO.: CV506-044

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr., ("the ALJ" or "ALJ Gold") denying her claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff filed an application for Disability Insurance Benefits on October 28, 2002, alleging that she became disabled on December 21, 2000, due to depression, anxiety disorder, degenerative disc disease, osteoarthritis, obstructive sleep apnea, myopathy, chronic pain syndrome, muscle spasms, thyroid disease, and migraine headaches. (Tr. at 19.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On March 2, 2005, ALJ Gold conducted a teleconference at which Plaintiff appeared and testified. Arthur Schmitt, a vocational expert, also testified at this conference. ALJ Gold found that Plaintiff was not disabled within the

meaning of the Act. (Id.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 12.)

Plaintiff, born on April 3, 1956, was forty-nine (49) years old when ALJ Gold issued his decision. She has a general equivalency degree ("GED"). (Pl.'s Br., p. 1.) Her past relevant work experience includes employment as a paraprofessional in an elementary school and as a county coordinator. (Tr. at 19.)

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is

presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of December 21, 2000, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 20, 26.) At Step Two, the ALJ determined that Plaintiff had mild degenerative disease and degenerative disc disease of the neck and back and abused prescription drugs, conditions considered "severe" under the Regulations. However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 25.) The ALJ found that Plaintiff had the residual functional capacity for a wide range of work at the light exertional level. At the next step, ALJ Gold concluded that Plaintiff could perform her past relevant work. (Tr. at 26.)

## ISSUES PRESENTED

Plaintiff asserts ALJ Gold erred by finding she was a prescription drug abuser and by finding her only impairments to be mild lumbar and cervical problems and prescription drug abuse.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I. ALJ Gold's determination that Plaintiff can return to her past relevant work is supported by substantial evidence.**

Plaintiff avers there is no evidence that she was a prescription drug abuser. Plaintiff alleges ALJ Gold failed to address the "severe and significant" problems from which she

has suffered for years. Plaintiff alleges the ALJ did not provide a reason he discounted the findings of Drs. Maquera, Canlas, Bolla, and Boswell that she suffered from fibromyalgia. Plaintiff also alleges the ALJ ignored her doctors' opinions and found she was a prescription drug abuser, without any evidence to support this finding. Plaintiff asserts the evidence of record documents her suffering, which has caused her to be unable to return to her past work or to perform any other work existing in the national economy.

Defendant contends the ALJ considered Plaintiff's impairments, but the medical evidence of record does not support Plaintiff's contentions that she is disabled. Defendant states the ALJ recognized Plaintiff's degenerative disc disease to be a severe impairment. Defendant also states the medical evidence "does not conclusively establish" Plaintiff was a prescription drug abuser, and although the ALJ may have erred in so finding, this is not cause for remand of this case. (Def.'s Br., p. 11.) According to Defendant, this finding did not affect the residual functional capacity ALJ Gold found Plaintiff to have or his determination that she could return to her past relevant work.

At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is defined as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). "Furthermore, the RFC determination is used both to

determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(e)).

It appears Plaintiff objects to ALJ Gold's determination that she could return to her past relevant work and was not disabled; accordingly, an evaluation at the fourth step of the sequential process is appropriate. In this case, ALJ Gold determined Plaintiff could perform work at the light exertional level. ALJ Gold reviewed the medical evidence of record, which is quite extensive.[1] The ALJ noted Plaintiff's hemorrhoid condition was not considered severe because this condition was resolved within 12 months and did not meet the Regulations' duration requirement. (Tr. at 21.) ALJ Gold also noted that Plaintiff had been diagnosed with sleep apnea and was prescribed a C-Pap mask; however, Plaintiff admitted to not using the mask, even though she reported having more energy when she used the mask. The ALJ observed x-ray evidence which showed Plaintiff had degenerative disc disease, but the physical examination of her legs and back was normal. ALJ Gold stated Plaintiff's treatment notes provided little information about the level or frequency of her back pain, but these notes did indicate that Plaintiff's physical examinations continued to be normal. (Tr. at 22.) Plaintiff was seen at the Institute of Pain Management, where she complained of low back pain, neck pain, and soreness all over her body. ALJ Gold stated Plaintiff's pain improved with the use of heat therapy, ice therapy, and biofreezing. ALJ Gold also stated that, as before, Plaintiff's physical examinations were "essentially normal" for someone her age, despite

---

[1] ALJ Gold reviewed Plaintiff's psychological records, as well as the medical records evidencing her physical impairments. However, Plaintiff does not assert ALJ Gold erred in failing to consider any non-exertional limitations she may have alleged. The undersigned need not discuss ALJ Gold's findings as to Plaintiff's psychological records.

her complaints of significant and chronic pain. (Tr. at 22.) ALJ Gold further noted Plaintiff's reports that epidural injections provided her with significant pain relief and brought her pain to tolerable levels. The ALJ observed that these reports, despite other reports to the contrary, showed conservative treatment was effective in relieving pain for more than a few hours. In fact, Plaintiff reported her pain had decreased by 80 to 90 percent. ALJ Gold noted Plaintiff's complaints of migraine headaches and that the treatment notes from Plaintiff's family practitioner showed that her migraines were infrequent. Specifically, the ALJ noted Plaintiff's report of a migraine in December 2000, and the next reported migraine was a year later; additionally, Plaintiff reported having a migraine headache in April 2002, and her next reported migraine was in January 2004. Plaintiff's migraines were treated with medications and physical therapy, and she reported improvement with the treatment. ALJ Gold noted Plaintiff's fibromyalgia diagnosis, but he stated Plaintiff's records did not reveal physical findings, such as trigger points, which were consistent with this diagnosis. Particularly, ALJ Gold noted an MRI scan of Plaintiff's lumbar spine showed only mild spondyloarthritis. (Tr. at 23.) The ALJ observed that Plaintiff lost 40 pounds and was exercising, which resulted in a noticeable improvement in her headaches and base line pain. ALJ Gold also observed Plaintiff's medical records over the years reveal that she has made inconsistent reports concerning the frequency and severity of her migraine headaches, neck and back pain, and general body pain, and that Plaintiff has given inconsistent reports regarding the effectiveness of conservative treatment for her pain complaints. In addition to the above findings, ALJ Gold determined that Plaintiff did not carry her burden of proof to establish she had the following severe impairments: ovarian and gastrointestinal cysts, a right

shoulder bruise as a result of a motor vehicle accident, and palpitation of the heart with resulting dizziness because these impairments did not last for the 12 month durational requirement; high cholesterol and a hiatal hernia, which had not resulted in "even minimal impairment of function" (Tr. at 24); and depression, anxiety, and panic attacks.

ALJ Gold determined, in accord with the State Agency consultative examiner's opinion, that Plaintiff retained the residual functional capacity to perform work at the light exertional level. He considered Plaintiff's symptoms, including pain, objective medical evidence, and other evidence, such as statements made by Plaintiff's friends. Because Plaintiff could perform work at the light exertional level, the vocational expert testified that Plaintiff could return to her past relevant work as a paraprofessional and as a county coordinator, both of which are performed in the general economy at the light exertional level.

The ALJ's decision that Plaintiff could perform work at the light exertional level, and therefore, her past relevant work, is supported by substantial evidence. Contrary to Plaintiff's assertions, ALJ Gold did not ignore the findings of her treating physicians. In fact, the ALJ considered the findings of Plaintiff's treating physicians and did not find their opinions to be completely supported by the evidence of record.[2] Additionally, many of Plaintiff's conditions were improved due to prescribed courses of treatment she underwent. (Tr. at 21-24.) Despite ALJ Gold's opinion that Plaintiff abused prescription

---

[2] It is well-established that the opinion of a treating physician "'must be given substantial or considerable weight unless good cause is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241.

medications, this does not appear to form the basis of his determination that Plaintiff could perform her past relevant work. Plaintiff's assertions of error are unavailing.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 11th day of May, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE